1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JEFFREY THOMAS SMITH,                    No.  2:14-cv-1916 JAM GGH PS

12                    Plaintiff,

13            v.                              ORDER AND FINDINGS AND
                                             RECOMMENDATIONS
14   MATTHEW LANGFORD, et al.,

15                    Defendant.

16

17   I.       INTRODUCTION

18            Presently before the court are defendants Matthew Langford, Matthew Polanco, Andrew

19   Menard, and Hewitt Enterprises, Inc. dba LJ's Towing's (collectively "defendants") motions to

20   dismiss (ECF Nos. 7 and 9) and plaintiff's request for judicial notice (ECF No. 13).

21            On January 27, 2015 and February 11, 2015, the court ordered plaintiff to show cause for

22   his failure to respond to defendants' motions.  ECF Nos. 8 and 14.  On February 3, 2015 and

23   February 27, 2015, plaintiff filed oppositions to defendants' motions.[1]  ECF Nos. 10 and 17.  On

24   February 5, 2015 and February 27, 2015, plaintiff responded to the orders to show cause.  ECF

25   Nos. 12 and 16.  Good cause appearing, the orders to show cause are discharged.

26            Plaintiff's request that the court take judicial notice of Ninth Circuit case law, although

27   

28   [1]  All motions were taken under submission without a hearing as oral argument was found to be
     unnecessary.

                                        1

1  not necessary, is granted.  A judicially noticed fact "must be one not subject to reasonable dispute

2  in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2)

3  capable of accurate and ready determination by resort to sources whose accuracy cannot

4  reasonably be questioned."  Fed. R. Evid. 201(b).  Case law is a matter of public record and is

5  capable of accurate and ready determination by resort to sources that cannot be reasonably

6  questioned.

7       Having reviewed the parties' filings, the undersigned now issues the following findings

8  and recommendations regarding defendants' motions to dismiss.

9  II.    <u>BACKGROUND</u>

10       Plaintiff filed his complaint on August 15, 2014, alleging that defendants violated his due

11  process rights and his civil rights under 42 U.S.C. § 1983 by towing his vehicle and enforcing the

12  suspension of a driver license without a hearing.  Plaintiff's claims concern a sobriety checkpoint

13  stop that occurred on August 16, 2013 and the subsequent impoundment of his vehicle.  Plaintiff,

14  driving his Geo Metro, was stopped at a sobriety checkpoint, at approximately 9:30 p.m., by

15  defendants Matthew Langford and Matthew Polanco, both officers of the California Highway

16  Patrol (collectively, the "CHP Officers").  ECF No. 1, ¶¶ 5, 9.  When the CHP Officers asked

17  plaintiff for his driver's license, plaintiff showed them his International Driving Permit ("IDP").

18  <u>Id.</u> ¶¶ 5, 9.  The CHP Officers discovered that plaintiff's California driver license had been

19  suspended since 1997.  <u>Id.</u>  Subsequently, the CHP Officers arranged to have plaintiff's vehicle

20  towed by defendant Hewitt Enterprises, Inc. dba LJ's Towing's ("LJ's Towing").  <u>Id.</u>  Defendant

21  Polanco then drove plaintiff to a local bus station so that plaintiff could catch a bus home.  <u>Id.</u>

22  III.    <u>LEGAL STANDARD</u>

23       A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

24  challenges the sufficiency of the pleadings set forth in the complaint.  <u>Vega v. J.P. Morgan Chase</u>

25  <u>Bank, N.A.</u>, 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

26  of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

27  plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); <u>see</u>

28  <u>also</u> <u>Paulsen v. CNF, Inc.</u>, 559 F.3d 1061, 1071 (9th Cir. 2009).  "To survive a motion to dismiss,

1    a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

2    is plausible on its face.'"   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v.

3    Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

4    factual content that allows the court to draw the reasonable inference that the defendant is liable

5    for the misconduct alleged."  Id.

6         In considering a motion to dismiss for failure to state a claim, the court accepts all of the

7    facts alleged in the complaint as true and construes them in the light most favorable to the

8    plaintiff.  Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not,

9    however, required to accept as true conclusory allegations that are contradicted by documents

10   referred to in the complaint, and [the court does] not necessarily assume the truth of legal

11   conclusions merely because they are cast in the form of factual allegations."  Paulsen, 559 F.3d at

12   1071.  The court must construe a pro se pleading liberally to determine if it states a claim and,

13   prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity

14   to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v.

15   Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police

16   Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed,

17   particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342

18   & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when

19   evaluating them under the standard announced in Iqbal).

20        In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally

21   consider only allegations contained in the pleadings, exhibits attached to the complaint, and

22   matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of Beaumont, 506

23   F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although the court may not

24   consider new facts in a memorandum in opposition to a defendant's motion to dismiss to

25   determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections,

26   151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers

27   in deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2

28   (9th Cir. 2003).

3

1    IV.    ANALYSIS

2           A.   § 1983 Claims for Damages Against Langford, Polanco and Menard in Their Official

3                Capacities

4           It is not clear whether plaintiff has named defendants Langford, Polanco and Menard in

5    their official capacities as well as their individual capacities.  Because plaintiff has requested

6    injunctive relief as well as damages, the undersigned will assume that he has sued the defendants

7    in both capacities.

8           The Eleventh Amendment bars federal suits for violations of federal law against state

9    officials sued in their official capacities for damages and other retroactive relief.  Quern v. Jordan,

10   440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); Peralta v. Dillard, 744 F.3d

11   1076, 1084 (9th Cir. 2014 (en banc); Pena v. Gardener, 976 F.2d 469, 472 (9th Cir. 1992).  The

12   Eleventh Amendment also bars federal suits for violations of state law against state officials sued

13   in their official capacity for retrospective and prospective relief.  Pennhurst State School &

14   Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67; Pena, 976 F.2d at 473.

15   However, the Eleventh Amendment does not bar federal suits against state officers sued in their

16   official capacities for prospective relief based on an ongoing violation of plaintiff's federal

17   constitutional or statutory rights.  Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d

18   662 (1974); Ex Parte Young, 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Central

19   Reserve Life of North America Ins. Co., 852 F.2d 1158, 1161 (9th Cir. 1988).  Thus, the Eleventh

20   Amendment does not preclude suits against state officials for injunctive relief.  See Idaho v.

21   Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 269, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); Ex

22   Parte Young, 209 U.S. 123.  In addition, the Eleventh Amendment does not bar federal suits for

23   violations of federal law or state law against state officials sued in their individual capacities for

24   damages.  Scheuer v. Rhodes, 416 U.S. 232, 238, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Ashker v.

25   California Dep't. of Corrections, 112 F.3d 392, 394 (9th Cir.1997); Pena, 976 F.2d at 473–74.

26          Plaintiff seeks $30,000 in damages from each defendant.  ECF No. 1, ¶ 41.  To extent

27   plaintiff seeks to recover $30,000 from defendants Langford, Polanco and Menard in their official

28   capacities, such an award is barred by the Eleventh Amendment.  Pena, 976 F.2d at 482 ("The

                                                    4

1   eleventh amendment bars . . . a federal court action for damages . . . brought by a citizen against a

2   state official acting in his official capacity.").  Plaintiff also seeks injunctive relief against

3   defendants Langford, Polanco and Menard, in their official capacities, preventing them from

4   continuing to enforce the California Vehicle Code in a manner that violates U.S. Supreme Court

5   rulings regarding towing automobiles and enforcing the suspension of a driver's license without a

6   hearing.  ECF No. 1 ¶¶ 37–39.  To the extent plaintiff is entitled to such relief, the Eleventh

7   Amendment does not bar plaintiff from pressing those claims—assuming for the moment that

8   plaintiff has stated a cognizable constitutional violation.

9        As to plaintiff's claims against defendants Langford, Polanco and Menard, in their

10  individual capacities, the Eleventh Amendment does not bar those claims and the undersigned

11  addresses them below.

12       B.  Remaining § 1983 Claims Against Langford, Polanco, and Menard in Their Individual

13           and Official Capacities

14       Plaintiff claims defendants Langford, Polanco and Menard violated his Fourth

15  Amendment, due process and equal protection rights when they impounded plaintiff's car.  The

16  Civil Rights Act under which this action was filed provides as follows:

17           Every person who, under color of [state law] . . . subjects, or causes
             to be subjected, any citizen of the United States . . . to the
18           deprivation of any rights, privileges, or immunities secured by the
             Constitution . . . shall be liable to the party injured in an action at
19           law, suit in equity, or other proper proceeding for redress.

20  42 U.S.C. § 1983.  Thus, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a

21  right secured by the Constitution and the laws of the United States, *and must show that the*

22  *alleged deprivation was committed by a person acting under color of state law.*"  West v. Atkins,

23  487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55.  The statute requires that there be an actual connection

24  or link between the actions of the defendants and the deprivation alleged to have been suffered by

25  plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423

26  U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within

27  the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

28  omits to perform an act which he is legally required to do that causes the deprivation of which

5

1  complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  There must be state

2  action by defendant.  Gritchen v. Collier, 254 F.3d 807, 812 (9th Cir. 2001).  No doubt, the

3  actions of the named individual defendants involve state action.

4        The CHP Officers argue that they are entitled to qualified immunity.  Generally,

5  government officials performing discretionary functions are shielded from liability for civil

6  damages insofar as their conduct does not violate clearly established statutory or constitutional

7  rights.  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  In

8  resolving a claim for qualified immunity the court addresses two questions: (1) whether the facts,

9  when taken in the light most favorable to plaintiff, demonstrate that the officer's actions violated a

10  constitutional right and (2) whether a reasonable officer could have believed that his conduct was

11  lawful, in light of clearly established law and the information the officer possessed.  Anderson v.

12  Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  Although the Supreme Court at

13  one time mandated that lower courts consider these two questions in the order just presented,

14  more recently the Supreme Court announced that it is within the lower courts' discretion to

15  address these questions in the order that makes the most sense given the circumstances of the

16  case.  Pearson v. Callahan, 555 U.S. 223, 227, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

17        As more fully discussed below, the undersigned finds that the facts, even considered in the

18  light most favorable to plaintiff, fail to demonstrate a constitutional violation.  Because the facts

19  do not demonstrate a constitutional violation on the part of the defendants Langford, Polanco and

20  Menard, plaintiff cannot state a federal claim upon which relief can be granted against LJ's

21  Towing.  Accordingly, plaintiff's federal claims against defendants should be dismissed.

22       1. Fourth Amendment – Impoundment of Plaintiff's Vehicle

23        Plaintiff contends defendants violated his Fourth Amendment rights when they

24  impounded plaintiff's car.  "The impoundment of an automobile is a seizure within the meaning

25  of the Fourth Amendment."  Miranda v. City of Cornelius, 429 F.3d 858, 862 (9th Cir. 2005).

26  However, the Fourth Amendment allows for the impoundment of a vehicle "under the community

27  caretaking doctrine if the driver's violation of a vehicle regulation prevents the driver from

28  lawfully operating the vehicle, and also if it is necessary to remove the vehicle from an exposed

6

1  or public location." Id. at 865.  "'Whether an impoundment is warranted under this community

2  caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent

3  it from creating a hazard to other drivers or being a target for vandalism or theft.'"  Ramirez v.

4  City of Buena Park, 560 F.3d 1012, 1025 (9th Cir. 2009) (quoting Miranda, 429 F.3d at 864); see

5  also South Dakota v. Opperman, 428 U.S. 364, 369, 96 S.Ct. 3092 (1976) ("The authority of

6  police to seize and remove from the streets vehicles impeding traffic or threatening public safety

7  and convenience is beyond challenge."); United States v. Cervantes, 703 F.3d 1135, 1142 (9th

8  Cir. 2012) (community caretaking exception did not justify impoundment of a vehicle that had

9  been "appropriately pulled to the curb" in a residential neighborhood); United States v. Caseres,

10  533 F.3d 1064, 1075 (9th Cir. 2008) (no community caretaking rationale for the impoundment of

11  a car "legally parked at the curb of a residential street two houses away from [the owner's]

12  home"); Mateos–Sandoval v. County of Sonoma, 942 F.Supp.2d 890, 910 (N.D. Cal. 2013)

13  (rejecting community caretaking argument on motion to dismiss where complaint alleged vehicle

14  was stopped in a safe, legal location and not blocking traffic).

15      The impoundment of plaintiff's Geo Metro did not violate plaintiff's Fourth Amendment

16  rights.  California Vehicle Code section 12500(a)(1) prohibits a person from driving on a highway

17  unless the person holds a valid driver license issued under the code.  There are specific

18  exemptions which include an exemption for "[a] non resident over the age of 18 years having in

19  his or her immediate possession a valid driver's license issued by a foreign jurisdiction of which

20  he or she is a resident . . . ."  Cal. Vehicle Code § 12502(a)(1).  California Vehicle Code section

21  12505(f) provides a person may operate a motor vehicle in this state without obtaining a license

22  from the department where they are a resident of a foreign jurisdiction having a valid driver's

23  license issued to him or her by a foreign jurisdiction.  Section 12505 further provides that

24  residency is determined by a person's state of domicile which means "the state where a person

25  has his or her true, fixed, and permanent home and principal residence and to which he or she has

26  manifested the intention of returning whenever he or she is absent."

27      Plaintiff was stopped at a sobriety checkpoint and did not produce a valid California

28  driver's license when asked.  He argues that his international driving permit allows him to legally

1   drive in California and reasons that he is not a California resident, but an inhabitant.  ECF No. 10,

2   at 18.  However, plaintiff's arguments fail for several reasons.  First, as may be judicially noticed,

3   "[t]he State of California **does not** recognize an International Driving Permit (IDP) as a valid

4   driver's license at least with respect to a California resident ."  "Driver License and Identification

5   Card System," available on the California Department of Motor Vehicles website at

6   https://www.dmv.ca.gov/portal/dmv/?1dmy&urile=wcm:path:/dmv_content_en/dmv/dl/dl_info#i

7   nternational (emphasis original).  See Chaoui v. City of Glendora, 2015 WL 728506 (C.D. Cal.

8   2015).  As such, plaintiff's assertion that he was legally driving with an IDP is incorrect.

9   Plaintiff's assertion that he is an inhabitant of California, as opposed to a California resident, is

10   unpersuasive.  Pursuant to California Vehicle Code § 12505, factors demonstrating residence

11   include "acts, occurrences, or events that indicate presence in the state is more than temporary or

12   transient."  Plaintiff admits that his California driver's license was suspended sometime in 1997

13   after the Sonoma County Clerk issued a complaint for failure to appear for a registration ticket.

14   ECF No. 1 ¶ 5.  After Officer Polanco dropped plaintiff off at the bus station, plaintiff caught the

15   bus to Cache Creek Casino and walked to his home in Clearlake Oaks, California.  ECF No. 1 ¶

16   5.  Plaintiff's current address is located in Middletown, California.  ECF No 1, at 1.  Plaintiff's

17   home address over the course of the past several years indicates a presence in California that is

18   more than temporary.

19          The facts, when taken in the light most favorable to plaintiff, do not demonstrate that the

20   CHP Officers violated plaintiff's Fourth Amendment rights by impounding plaintiff's Geo Metro.

21   According to plaintiff, "[t]he car was parked in a small parking area just outside of a convenience

22   store on Highway 16 in Woodland, and it was not close enough to the edge of the highway to

23   present any danger of blockage of the roadway or any possibility of a collision from passing

24   cars."  ECF No. 10, at 13:6–10.  However, defendants note from a common sense standpoint that

25   a sobriety checkpoint, by its very nature, raises public safety concerns, as it requires routing

26   numerous vehicles and can be a logistical problem in controlling and regulating the flow of

27   traffic.  Defendants add that, at night, the element of darkness requires vehicles to be placed in a

28   safe area away from the sobriety check point and that leaving a car on a highway also raises

1    concerns of theft and vandalism.  Plaintiff himself admits that the highway on which he was

2    stopped was "heavily traveled."  ECF No. 17 at 8.  Plaintiff further admits that his chosen place to

3    park his car was a small parking lot serving a private business.  Id.  While one may park

4    indefinitely in an otherwise non-restricted residential parking area, the situation is different for a

5    parking space serving a privately owned business.

6        Plaintiff asserts that the subsequent impoundment of his vehicle was unconstitutional

7    under Miranda v. City of Cornelius, 429 F.3d 858, 862 (9th Cir. 2005).[2]  In Miranda, the Ninth

8    Circuit held that the impoundment of a vehicle parked in the owner's driveway and in which one

9    of the passengers had a valid license to drive was not warranted under the community caretaking

10   doctrine.  Id. at 865–66.  The circumstances presented here are distinguishable.  According to

11   plaintiff, the traffic stop occurred at a sobriety check point at 9:30 p.m.  ECF No. 1, at 4:3–4.  The

12   vehicle was not safely parked in plaintiff's driveway, as in Miranda.  Furthermore, there was no

13   passenger who could legally drive plaintiff's car home.  Accordingly, reliance on Miranda is

14   misplaced.

15       Even if plaintiff could make out a constitutional violation for the seizure of his vehicle at

16   the sobriety checkpoint, the officers involved would have been reasonably mistaken as to their

17   duties to enforce California law based on the unique set of facts set forth above, i.e. the use of an

18   IDP license not recognized by California, and the vehicle's location at the potentially crowded

19   sobriety checkpoint.

20       The facts fail to demonstrate a violation of plaintiff's Fourth Amendment rights, or that

21   the defendants Polanco, Langford and Menard are not otherwise entitled to qualified immunity.

22   Accordingly, plaintiff's Fourth Amendment claim against the CHP Officers in their individual

23   capacity should be dismissed.

24   _____

25   [2]  The undersigned acknowledges that California Vehicle Code sections 14602.6(a)(1) and
     14607.6 permit a peace officer may impound a vehicle if the driver is unable to produce a valid
26   driver's license.  Nonetheless, Miranda instructs that "state statute does not, in and of itself,
     determine the reasonableness of the seizure under the Fourth Amendment, as applied to the states
27   by the Fourteenth Amendment."  429 F.3d at 865; see also Cervantes, 703 F.3d at 1142 ("The fact
     that an impoundment complies with a state statute or police policy, by itself, is insufficient to
28   justify an impoundment under the community caretaking exception.").

1                              2.  Fourteenth Amendment Claims

2          The complaint fails to state claims for violation of the Fourteenth Amendment under 42

3   U.S.C. § 1983.  To the extent plaintiff attempts to state a violation of the Due Process Clause of

4   the Fourteenth Amendment related to the seizure of his vehicle, that claim is improper.  All

5   constitutional claims resulting from an arrest, investigatory stop, or other seizure of a free citizen

6   should be analyzed under the Fourth Amendment rather than under a substantive due process

7   approach.  Graham v. O'Connor, 490 U.S. 386, 395, 109 S.Ct. 1865 (1989).

8          Plaintiff also appears to claim that his driver's license was suspended without notice and

9   opportunity for a pre-deprivation hearing.  ECF No. 1, at 4:14–26.  To the extent plaintiff brings

10  this claim, he failed to allege any facts suggesting defendants were responsible for the allegedly

11  improper suspension of his driver's license.  To the extent plaintiff claims he is entitled to a pre-

12  tow hearing, the Ninth Circuit has held that pre-tow hearing is not required before impounding a

13  vehicle.  Soffer v. City of Costa Mesa,  798 F.2d 361, 363 (9th Cir. 1986).

14         As to plaintiff's equal protection claim, he asserts he must be treated on equal footing with

15  those who have left a disabled car on the side of the highway and are given a grace period to have

16  it removed.  ECF No. 10, at 12.  Generally, a plaintiff invoking equal protection must demonstrate

17  that he is similarly situated to other persons, but received an application of the law which another

18  person did not.  See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct.

19  3249,  87 L.Ed.2d 313 (1985) ("Equal Protection Clause of the Fourteenth Amendment

20  commands that no State shall 'deny to any person within its jurisdiction the equal protection of

21  the laws,' which is essentially a direction that all person similarly situated should be treated

22  alike.").  The federal court would then decide whether the distinction in application occurred

23  because the state had a rational basis for the distinction, or for fundamental rights or suspect

24  classes, a compelling interest for the distinction.  See Nordlinger v. Hahn, 505 U.S. 1, 10, 112

25  S.Ct. 2326, 120 L.Ed.2d 1 (1992) ("[U]nless a classification warrants some form of heightened

26  review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an

27  inherently suspect characteristic, the Equal Protection Clause requires only that the classification

28  rationally further a legitimate state interest."); Romer v. Evans, 517 U.S. 620, 631, 116 S.Ct.

1  1620, 1627, 134 L.Ed.2d 855 (1996) ("[I]f a law neither burdens a fundamental right nor targets a

2  suspect class, we will uphold the legislative classification so long as it bears a rational relation to

3  some legitimate end.").

4  Plaintiff does not allege he is a member of a suspect class or defendants' actions burdened

5  a fundamental right.  Rather, he appears to allege that he is similarly situated to the hapless

6  motorist whose car breaks down while travelling the public roads.  He is not so similarly situated.

7  Plaintiff contends the California Highway Patrol has a standard practice of placing bright

8  yellow warning tags on disabled vehicles and giving a grace period before towing the vehicle.  As

9  such, he asserts, a yellow warning tag should have been placed on his vehicle and he should have

10  been given a grace period before defendants towed it.  Defendants offer several reasonable

11  explanations for why plaintiff's vehicle was impounded in this instance rather than given a yellow

12  warning tag and a grace period.  First, defendants note that California Vehicle Code sections

13  14602.6 and 14607.6 authorize a peace officer to seize a vehicle when the person driving that

14  vehicle is unlicensed.  ECF No. 7, at 19.  Defendants also assert that plaintiff was stopped at a

15  sobriety checkpoint, the very nature of which raises traffic and public safety concerns and

16  requires the officer to stop and route numerous vehicles.  ECF No. 7, at 21.  Finally, plaintiff's

17  vehicle was parked on a section of Highway 16 which is "heavily traveled" (ECF No. 10, at 13),

18  raising a concern of theft and vandalism to the vehicle (ECF No. 7, at 21).

19  Unlike the broken down motorist, plaintiff was violating the law in California as he was

20  driving on the public roads without a license.  The existence of a valid driver's license is often the

21  *sine qua non* for insurance making a person in plaintiff's position much more likely to be driving

22  "bare."  Moreover, as noted above, common sense dictates that sobriety checkpoint presents

23  much different logistical concerns than does the typical breakdown.  Plaintiff is only similarly

24  situated to other suspended licensed drivers who are stopped by law enforcement while driving.

25  Plaintiff has not alleged that he was treated differently from similarly situated individuals,

26  i.e., that other unlicensed drivers who were stopped at the sobriety checkpoint in Woodland near

27  Highway 16 did not have their cars towed.  Plaintiff failed to sufficiently allege an equal

28  protection claim.  See; Alviso v. Sonoma County Sheriff's Dept., 186 Cal. App 4th 198, 207-208

11

1     (2010) (finding no equal protection violation in similar circumstances).  Accordingly, plaintiff's

2     Fourteenth Amendment claims should be dismissed.

3          C.   § 1983 Claims Against LJ's Towing

4          Plaintiff alleges LJ's Towing is liable for violation of his Fourth Amendment rights due to

5     the impoundment of his Geo Metro.  Suits brought against private entities for alleged

6     constitutional violations committed by their employees must satisfy the strictures of <u>Monell</u>.  <u>See</u>

7     <u>Tsao v. Desert Palace, Inc.</u>, 698 F.3d 1128, 1139 (9th Cir. 2012) ("[W]e see no basis in the

8     reasoning underlying <u>Monell</u> to distinguish between municipalities and private entities acting

9     under color of state law.").  In <u>Monell</u>, the Supreme Court limited municipal liability and held

10     that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other

11     words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  436

12     U.S. at 691.  Instead, "[l]ocal governing bodies ... can be sued directly under § 1983 for monetary,

13     declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional

14     implements or executes a policy statement, ordinance, regulation, or decision officially adopted

15     and promulgated by that body's officers."  <u>Id.</u> at 690 (footnote omitted).  In <u>Tsao</u>, the Ninth

16     Circuit concluded that the requirements of <u>Monell</u> apply to suits against private entities.  698 F.3d

17     at 1139.  Accordingly, to state a claim against LJ's Towing, plaintiff must have alleged that LJ's

18     Towing acted under the color of state law, and, if a constitutional violation occurred, the violation

19     was caused by an official policy or custom of LJ's Towing.  <u>See id.</u>

20          LJ's Towing concedes that it was acting at the direction of the California Highway Patrol

21     and thus is considered a state actor for § 1983 purposes.  <u>See</u> <u>Stypmann v. City and County of San</u>

22     <u>Francisco</u>, 557 F.2d 1338, 1341–42 (9th Cir. 1977) ("[T]he private towing company is a willful

23     participant in a joint activity with the State or its agents, and there is a sufficiently close nexus

24     between the State and the challenged action of the (towing company) so that the action of the

25     latter may be fairly treated as that of the State itself.") (internal quotations and citations omitted);

26     ECF No. 9, at 3 (LJ's Towing conceding it was a state actor).  However, having concluded that no

27     constitutional violation had occurred, plaintiff's claims against LJ's Towing should be dismissed.

28     <u>See</u> <u>Tatum v. City and County of San Francisco</u>, 441 F.3d 1090, 1100 (9th Cir. 2006) (absent a

1  constitutional deprivation city could not be held liable under section 1983); <u>Orin v. Barclay</u>, 272

2  F.3d 1207, 1217 (9th Cir. 2001) ("A § 1983 action against a city fails as a matter of law unless a

3  city employee's conduct violates one of the plaintiff's federal rights.").  Accordingly, plaintiff's

4  claims against LJ's Towing should be dismissed.

5      D.  <u>Injunctive Relief</u>

6  Because plaintiff has not state a cognizable constitutional violation, plaintiff has no right

7  to injunctive relief.  Therefore, all claims against defendants in their official capacities should be

8  dismissed.

9      E.  <u>State Law Claims</u>

10  Plaintiff alleges defendants conduct and resulting harm to plaintiff constitutes intentional

11  infliction of emotional distress.  The elements of this state law claim are (1) extreme and

12  outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

13  probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional

14  distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's

15  outrageous conduct.  <u>Cochran v. Cochran</u>, 65 Cal. App. 4th 488, 494, 76 Cal. Rptr. 2d 540 (1998)

16  (citation omitted).  As the California Supreme Court has explained, this tort imposes liability only

17  for "conduct exceeding all bounds usually tolerated by a decent society, of a nature which is

18  especially calculated to cause, and does cause, mental distress." <u>Cole v. Fair Oaks Fire Dept.</u>, 43

19  Cal. 3d 148, 155 n. 7 (1987).  The complaint fails to allege any conduct by defendant that rises to

20  this level.  Certainly, the conduct alleged here "did not include threats of physical harm, public

21  harassment or other such conduct which the [California] cases require to be deemed 'extreme and

22  outrageous.'"  <u>Standard Wire & Cable Co. v. Ameritrust Corp.</u>, 697 F. Supp. 368, 372 (C.D. Cal.

23  1988).  Rather, plaintiff paints a picture that defendants Langford and Polanco were friendly and

24  even drove plaintiff to the bus station so that plaintiff could catch the bus home—demonstrating

25  conduct far from extreme and outrageous.  Furthermore, state law claims should be dismissed

26  where there are no federal claims remaining.  Accordingly, this court declines to exercise

27  supplemental jurisdiction over plaintiff's state law claims.  <u>See</u> 28 U.S.C. § 1367(c)(3) ("The

28  district courts may decline to exercise supplemental jurisdiction over a claim . . . if—the district

13

1   court has dismissed all claims over which it has original jurisdiction.").

2   V.      CONCLUSION

3         The court has considered whether to permit plaintiff leave to amend—something that is

4   usually done.  However, in this case plaintiff has articulately set forth the facts in detail, both in

5   his complaint and oppositions, and under those facts plaintiff is not entitled to relief.

6         IT IS ORDERED that:

7         1.  The orders to show cause, filed on January 27, 2015 (ECF No. 8) and February 11,

8   2015 (ECF No. 14), are discharged; and

9         2.  Plaintiff's request for judicial notice (ECF No. 13) is granted.

10        For the foregoing reasons, IT IS RECOMMENDED that:

11        1.  Defendants Matthew Langford, Matthew Polanco, and Andrew Menard's motion to

12   dismiss, filed December 30, 2014 (ECF No. 7), be granted;

13        2.  Defendant Hewitt Enterprises, Inc. dba LJ's Towing's motion to dismiss, filed January

14   29, 2015 (ECF No. 9), be granted; and

15        3.  This action be dismissed with prejudice.

16        These findings and recommendations are submitted to the United States District Judge

17   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen

18   (14) days after being served with these findings and recommendations, any party may file written

19   objections with the court and serve a copy on all parties.  Such a document should be captioned

20   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

21   shall be served and filed within seven (7) days after service of the objections.  The parties are

22   advised that failure to file objections within the specified time may waive the right to appeal the

23   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

24   DATED: May 26, 2015

25                                    /s/ Gregory G. Hollows

26                              UNITED STATES MAGISTRATE JUDGE

27

28   GGH:016/smith1916.mtd

14